SUSAN JANE M. BROWN (OSB #054607)
WESTERN ENVIRONMENTAL LAW CENTER
4107 N.E. Couch Street
Portland, OR 97232
(503) 914-1323 | Phone
brown@westernlaw.org

KRISTEN L. BOYLES (WSB #23806)
*(Pending Pro Hac Vice Admission)*
EARTHJUSTICE
810 Third Avenue, Suite 610
Seattle, WA 98104
(206) 343-7340 | Phone
kboyles@earthjustice.org

*Attorneys for Plaintiffs*

RYAN ADAIR SHANNON (OSB # 155537)
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 11374
Portland, OR 97211
Tel: 503-283-5474 ext. 407
rshannon@biologicaldiversity.org

*Attorney for Center for Biological Diversity*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| AUDUBON SOCIETY OF PORTLAND, CASCADIA WILDLANDS, CENTER FOR BIOLOGICAL DIVERSITY, CONSERVATION NORTHWEST, ENVIRONMENTAL PROTECTION INFORMATION CENTER, KLAMATH-SISKIYOU WILDLANDS CENTER, OREGON WILD, SIERRA CLUB, and THE WILDERNESS SOCIETY,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. FISH AND WILDLIFE SERVICE,<br><br>Defendant. | Case No.<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF<br><br>(Endangered Species Act, 16 U.S.C. § 1531 *et seq.;* Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*) |

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF  -1-

## INTRODUCTION

1.       This case challenges the decision of the U.S. Fish and Wildlife Service ("FWS")

to eliminate—without warning, justification, or lawful process—approximately 3.4 million acres

of federal forestland from the designated critical habitat for the threatened northern spotted owl.

FWS last designated critical habitat for the northern spotted owl in 2012, identifying

approximately 9.5 million acres of federal and state forestland as necessary for the owl's survival

and recovery.  In August 2020, under a settlement agreement in a long pending lawsuit

challenging the 2012 designation, FWS proposed to exclude approximately 200,000 acres of

habitat from protected status.  The final critical habitat rule, published on January 15, 2021,

eliminated 3,472,077 acres of federal land from the owl's critical habitat designation, 17 times

the amount of habitat proposed for exclusion a few months earlier.  This unheralded change from

proposed to final violated the notice and comment requirements of the Administrative Procedure

Act ("APA") and the Endangered Species Act ("ESA") itself.

2.       FWS produced no cogent economic or biological explanation for the critical

habitat revision.  In fact, FWS admitted that the excluded habitat qualified as critical habitat

necessary for the owl's survival and recovery.  FWS also failed to undertake a new economic

analysis to support the revision, instead relying on the 2012 economic review that found little, if

any, economic impacts from designating a far greater amount of habitat.

3.       Instead, FWS relied solely on its discretionary authority, found in ESA § 4(b)(2),

to exclude areas from critical habitat when the benefits of exclusion exceed the benefits of

inclusion.  Yet even in this discretionary realm, FWS considered irrelevant factors, failed to

rationally explain what the alleged benefits of exclusion were, failed to explain its change in

policy from the prior rule, and failed to comply with the legal mandate to view benefits of

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF  -2-

Western Environmental Law Center
4107 NE Couch Street
Portland, Oregon  97232
(503) 914-1323

exclusion through the lens of species conservation.  FWS also failed to follow the ESA's

mandate to use the best available science and comply with the ESA's precautionary principle.

4.      In sum, FWS's 2021 revision to northern spotted owl critical habitat violated the

ESA and the APA.  Plaintiffs ask the Court to vacate the 2021 Rule, an action that will reinstate

the legitimate and appropriately protective 2012 critical habitat designation.

## JURISDICTION AND VENUE

5.      Plaintiffs bring this action pursuant to the ESA citizen suit provision, 16 U.S.C. §

1540(g), which waives federal defendant's sovereign immunity, and the APA, 5 U.S.C. § 704.

As required by 16 U.S.C. § 1540(g), plaintiffs provided FWS with notice of intent to sue on

January 19, 2021 (attached).  This Court has jurisdiction over plaintiffs' claims pursuant to 28

U.S.C. § 1331 (federal question) and may issue a declaratory judgment and further relief

pursuant to 28 U.S.C. §§ 2201–02.

6.      Venue is properly vested in this Court under 28 U.S.C. § 1391(e) and 16 U.S.C. §

1540(g)(3), as a number of the plaintiffs reside in this district, plaintiffs have members and

offices in Oregon, and many of the consequences of FWS's violations of the law giving rise to

the claims occurred or will occur in this district.

## PARTIES

7.      The plaintiffs in this action are:

A.      <u>Audubon Society of Portland</u>, a non-profit organization founded in 1902 based in

Portland, Oregon, with 17,000 members in Oregon and sanctuaries in Portland, near Mt. Hood,

and in the Oregon Coast Range.  Audubon's mission is to inspire all people to love and protect

birds, wildlife, and the natural environment upon which life depends.  Audubon works to protect

northern spotted owls and other native wildlife through science-based advocacy and

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF  -3-

environmental education.  Audubon has a long history of working to protect northern spotted owls, including serving as petitioner on the original August 1987 petition to list the northern spotted owl under the Endangered Species Act.  For more than three decades, Audubon has remained actively involved in conservation and recovery of the northern spotted owl, serving on multiple advisory committees, advocating for stronger protections, engaging and educating the public on issues related to northern spotted owls, rehabilitating northern spotted owls at the Wildlife Care Center, and periodically housing non-releasable northern spotted owls for use as federally licensed educational animals.  Audubon members regularly use the range of the northern spotted owl for a variety of professional and personal pursuits including viewing threatened and endangered species.

B.      Cascadia Wildlands, an Oregon non-profit organization based in Eugene, Oregon.
Representing over 12,000 members and supporters, Cascadia Wildlands is devoted to the conservation of the Cascadia Bioregion, which extends from northern California to southeastern Alaska. Cascadia Wildlands defends and restores Cascadia's wild ecosystems in the forests, in the courts, and in the streets.  Cascadia Wildlands uses a combination of education, organizing, outreach, litigation, advocacy, and collaboration to defend wild places and promote sustainable, restoration-based forestry.  Cascadia Wildlands' members use the range of the northern spotted owl for a variety of professional and personal pursuits including viewing threatened and endangered species.

C.      Center for Biological Diversity, a non-profit environmental organization
dedicated to the protection of native species and their habitats through science, policy, and environmental law.  The Center is incorporated in California and headquartered in Tucson, Arizona, with field offices throughout the United States and Mexico, including in Portland,

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF  -4-

Western Environmental Law Center
4107 NE Couch Street
Portland, Oregon  97232
(503) 914-1323

Oregon and Seattle, Washington.  The Center has over 84,000 members.  The Center and its members are concerned with the conservation of imperiled species, including the northern spotted owl.  The Center submitted comments on the proposed northern spotted owl critical habitat rule in 2020.  The Center's individual members have visited, studied, worked, and recreated on lands that are home to northern spotted owls, including on the lands stripped of protections by the 2021 critical habitat revision, and they have specific intentions to continue to do so frequently and on an ongoing basis.  The Center's members derive recreational, spiritual, professional, commercial, scientific, educational, and aesthetic benefits from their interactions with northern spotted owls and their critical habitat.

D.    <u>Conservation Northwest</u>, a non-profit regional conservation organization founded in 1989, based in Seattle, Washington, with a mission to protect and connect habitat, and restore imperiled wildlife from the Pacific Coast to the Canadian Rockies.  Conservation Northwest has over 17,000 members and supporters, and engages in science-based advocacy through collaboration on projects that protect wildlife habitat and restore forest and watershed ecological resilience.  Conservation Northwest is an active voice strongly advocating for imperiled species such as the northern spotted owl, marbled murrelet, Canada lynx, grizzly bear, wolf, wolverine, sage grouse, pygmy rabbit, and woodland caribou.  Conservation Northwest and its members use, enjoy, recreate, and engage in other pursuits on public lands within the range of the northern spotted owl.

E.    <u>Environmental Protection Information Center ("EPIC")</u>, a nonprofit public benefit corporation organized under the laws of California.  Since 1977, EPIC has defended the wildlife and wild places of the Klamath Mountains and North Coast Range.  EPIC's mission is the science-based protection and restoration of northwest California's forests and seeks to ensure

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF  -5-

Western Environmental Law Center
4107 NE Couch Street
Portland, Oregon  97232
(503) 914-1323

that a connected landscape exists for species survival and climate adaption.  EPIC's advocacy

utilizes community organizing, public education, collaboration, and litigation and submits

substantive comments on projects that would negatively impact public and private forestlands.

EPIC maintains an office in Arcata, California.  Most of EPIC's 15,000 members and supporters

live in northern California. E PIC's members and staff use, enjoy, and recreate on public lands

within the range of the northern spotted owl.

     F.     <u>Klamath-Siskiyou Wildlands Center ("KS Wild")</u>, a domestic non-profit

corporation organized and existing under the laws of the State of Oregon.  KS Wild's main

offices are in Ashland, Oregon.  KS Wild has over 6,000 supporters (donors, subscribers, action

takers, and volunteers) across 40 states, with most supporters concentrated in southern Oregon

and northern California.  On behalf of its members, KS Wild advocates for the forests, wildlife,

and waters of the Rogue and Klamath Basins and works to protect and restore the extraordinary

biological diversity of the Klamath-Siskiyou region of southwest Oregon and northwest

California.  KS Wild uses environmental law, science, education, and collaboration to help build

healthy ecosystems and sustainable communities.  Through its campaign work, KS Wild strives

to protect the last wild areas and vital biological diversity of the Klamath region.  KS Wild is a

leader in protecting public lands and routinely participates in commenting, monitoring, and

litigation affecting public lands and the natural resources located there.  KS Wild's members and

staff use, enjoy, and recreate on public lands within the range of the northern spotted owl.

     G.     <u>Oregon Wild</u>, a non-profit corporation with approximately 20,000 members and

supporters throughout the state of Oregon and the Pacific Northwest.  Oregon Wild and its

members are dedicated to protecting and restoring Oregon's lands, wildlife, and waters as an

enduring legacy.  Oregon Wild members use the range of the northern spotted owl for hiking,

Western Environmental Law Center
4107 NE Couch Street
Portland, Oregon  97232
(503) 914-1323

recreation, bird watching, nature appreciation, and other recreational and professional pursuits. Oregon Wild and its members have a long history of involvement with federal agencies charged with protecting the northern spotted owl and the old growth forests it needs to survive.

       H.     <u>Sierra Club</u>, one of the oldest environmental organizations in the United States. Sierra Club is incorporated in the State of California, with regional chapters in Oregon and Washington. The organization has over 842,000 members nationwide, with 23,000 members in Oregon and 32,700 members in Washington. Sierra Club is dedicated to protecting and preserving the natural and human environment, and its purpose is to explore, enjoy, and protect the wild places of the earth; to practice and promote the responsible use of the earth's ecosystems and resources; and to educate and enlist humanity to protect and restore the quality of the natural and human environments. Its mission includes engaging its members and the public to protect public lands, wildlife habitat, and wildlife, and it has been a longtime, active public advocate for imperiled wildlife. The Sierra Club has individual members who regularly visit, study, work, photograph, or recreate on lands that are protected habitat for threatened northern spotted owls. Each of these members has specific intentions to continue to interact with northern spotted owls and their critical habitat frequently and on an ongoing basis. Sierra Club members and staff derive recreational, spiritual, professional, scientific, educational, and aesthetic benefits from their interactions with threatened northern spotted owls and their critical habitat.

       I.     <u>The Wilderness Society ("TWS")</u>, a national non-profit organization working to unite people to protect America's wild places. Founded in 1935 and with more than one million members and supporters, with approximately 27,800 members and over 9,700 supporters in California, Oregon, and Washington, and offices in Oakland, California, and Seattle, Washington, TWS has led the effort to permanently protect 111 million acres of wilderness and

Western Environmental Law Center
4107 NE Couch Street
Portland, Oregon  97232
(503) 914-1323

to ensure sound management of our shared national lands.  The Wilderness Society sees a future where people and wild nature flourish together, meeting the challenges of a rapidly changing planet.  To accomplish that vision, TWS works to ensure that public lands are a solution to the climate and extinction crises and that all people benefit equitably from public lands.

8.      Plaintiff groups each have members who reside, work, travel, and recreate in places where northern spotted owls are found, including on the lands stripped of protections by the 2021 critical habitat revision.  The plaintiff groups and their members derive scientific, recreational, aesthetic, economic, and conservation benefits and enjoyment from northern spotted owls and their critical habitat.  Plaintiffs have a longstanding concrete interest in FWS's lawful implementation of the ESA and its role in preventing harm to and promoting recovery of imperiled wildlife, and the regulatory revisions to northern spotted owl critical habitat challenged in this lawsuit fundamentally undermine and contradict the requirements of the ESA.  The past, present, and future enjoyment of these benefits by plaintiff groups and their members has been, is being, and will continue to be irreparably harmed by FWS's disregard of their statutory duties and by the unlawful injuries and risk of injuries imposed on northern spotted owls and their critical habitat by their actions.

9.      The federal defendant in this action is:

A.      <u>United States Fish and Wildlife Service</u>, a federal agency within the Department of the Interior.  FWS is responsible for administering the ESA with respect to terrestrial wildlife, including northern spotted owls.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF  -8-

BACKGROUND

A.    The Endangered Species Act and Designated Critical Habitat

10.    The ESA was enacted in 1973 to "provide a program for the conservation of . . . endangered species and threatened species" and to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved."  16 U.S.C. § 1531(b).

11.    Under the ESA, the Secretary of the Interior or Commerce ("the Secretary") shall list a species as endangered if it is "in danger of extinction throughout all or a significant portion of its range," or as threatened if it is "likely to become an endangered species within the foreseeable future."  16 U.S.C. §§ 1533(a)(1), 1532(6) & (20).

12.    Congress recognized that habitat loss was "the major cause for the extinction of species worldwide."  H.R. Rep. No. 1625, 95th Cong., 2d Sess. 5, *reprinted in* 1978 U.S.C.C.A.N. 9453, 9455.  Concurrently with listing a species as threatened or endangered, the Secretary also must designate the species' "critical habitat" to the maximum extent prudent and determinable.  16 U.S.C. § 1533(a)(3)(A)(i).

13.    The ESA defines critical habitat as specific areas: (1) within the geographic area occupied by the species at the time it is listed, on which are found those physical or biological features that are "essential to the conservation of the species" and which may require special management consideration or protections, and (2) outside the geographic area occupied by the species at the time it is listed that are "essential for the conservation of the species."  *Id*. § 1532(5)(A)(i), (ii).

14.    "Conservation" means "the use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF  -9-

Western Environmental Law Center
4107 NE Couch Street
Portland, Oregon  97232
(503) 914-1323

measures provided pursuant to this Act are no longer necessary"—*i.e.* the species is recovered. *Id.* § 1532(3). The Ninth Circuit has emphasized that "the purpose of establishing 'critical habitat' is for the government to carve out territory that is not only necessary for the species' survival but also essential for the species' recovery." *Gifford Pinchot Task Force v. U.S. Fish & Wildlife Serv.*, 378 F.3d 1059, 1070 (9th Cir. 2004).

15.    A critical habitat designation must be based on the best scientific data available and must take into consideration the economic impact, and any other relevant impact, of specifying any particular area as critical habitat. 16 U.S.C. § 1533(b)(2). FWS is also required to "make available for public comment the draft economic analysis of the designation. The draft economic analysis will be summarized in the Federal Register notice of the proposed designation of critical habitat." 50 C.F.R. § 424.19(b).

16.    FWS may exclude an area from critical habitat only if it "determines that the benefits of such exclusion outweigh the benefits of specifying such area as part of the critical habitat, unless [it] determines, based on the best scientific and commercial data available, that the failure to designate such area as critical habitat will result in the extinction of the species concerned." 16 U.S.C. § 1533(b)(2). FWS's determination is then reviewable to see if the agency "abused its discretion" in eliminating any protections. *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 371 (2018).

17.    In 2016, FWS and NMFS published a final policy to further explain how the Services conduct their discretionary exclusion analyses (the "2016 Policy"). *See* 81 Fed. Reg. 7,226 (Feb. 11, 2016). The 2016 Policy provided that the Services will prioritize designation of critical habitat on federal lands, and "focus our exclusions on non-Federal lands." *Id.* at 7,232. The policy recognized the high conservation value of designating federal lands because of the

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF  -10-

Western Environmental Law Center
4107 NE Couch Street
Portland, Oregon  97232
(503) 914-1323

affirmative duty ESA Section 7 placed on federal agencies to "utilize their authorities in furtherance of the purposes" of the Act and to "insure" that any actions authorized, funded, or carried out by a federal agency do not destroy or adversely modify critical habitat.  16 U.S.C. § 1536(a)(1), (2); *see* 81 Fed. Reg. at 7,231.

  B. <u>Northern Spotted Owls</u>

  18. Northern spotted owls are medium-sized, chestnut brown owls with dark eyes and whitish spots on the head, neck, and breast.



  19. Northern spotted owls live in structurally complex forests in the Pacific Northwest, from the Canadian border in Washington State to Marin County, California.  The

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF  -11-

Western Environmental Law Center
4107 NE Couch Street
Portland, Oregon  97232
(503) 914-1323

owls prefer old-growth forests that contain large trees that take at least 150 years to mature, with

a multi-layered, high forest canopy.  Because of their sensitivity and need for a particular type of

habitat, northern spotted owls are often referred to as an indicator species.  Within an old-growth

forest, the presence of northern spotted owls is an indicator that the entire forest ecosystem is

healthy.

20.    FWS protected the northern spotted owl as a threatened species under the ESA in

1990, in large part due to the destruction of its structurally complex old-growth forest habitat

through commercial logging.  *Determination of Threatened Status for the Northern Spotted Owl*,

55 Fed. Reg. 26,114 (June 26, 1990) (codified at 50 C.F.R. § 17.11(h)).

C.    Northern Spotted Owl Critical Habitat

21.    FWS first designated critical habitat for the owl in 1992, protecting owl habitat on

6,887,000 acres of public forestland in California, Oregon, and Washington.  *Determination of*

*Critical Habitat for the Northern Spotted Owl*, 57 Fed. Reg. 1,796 (Jan. 15, 1992).  Critical

habitat designation provides essential protections for the northern spotted owl by preventing

federal agencies from permitting, funding, or carrying out actions that "destroy" or "adversely

modify" these designated areas.  16 U.S.C. § 1536(a)(2).  Because of the seriousness of the threat

posed by habitat destruction, critical habitat is one of the most important protections provided by

the ESA for the spotted owl.

22.    The timber industry and its allies began an immediate political and legal attack on

both the owl listing and the designation of critical habitat.  These efforts first came to fruition in

the second Bush administration, and in 2008, as part of a settlement of a timber industry lawsuit,

FWS eliminated approximately 1.5 million acres of federal forestland from protected status.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF  -12-

Western Environmental Law Center
4107 NE Couch Street
Portland, Oregon  97232
(503) 914-1323

*Revised Designation of Critical Habitat for the Northern Spotted Owl*, 73 Fed. Reg. 47,326

(Aug. 13, 2008).

23.     Conservation groups, including several of the plaintiffs here, successfully

challenged that reduction, citing demonstrable political interference and failure to comply with

the ESA's best science mandate.  *Carpenters Industrial Council v. Kempthorne*, No. 08-1409-

EGS (D.D.C.).  FWS retracted the downward revision, issued a draft economic analysis for a

new critical habitat rule, and in 2012 issued a critical habitat rule based on the best available

science that expanded the prior designation and protected approximately 9.5 million acres of

federal and state forestland as critical to the owl's survival and recovery.  *Designation of Revised*

*Critical Habitat for Northern Spotted Owl*, 77 Fed. Reg. 71,876, 71,877 (Dec. 4, 2012).

24.     In the 2012 critical habitat rule, FWS excluded, pursuant to ESA § 4(b)(2),

"specific areas covered under conservation agreements, programs, and partnerships," of

approximately four million acres.  77 Fed. Reg. at 71,890–91, Table 2.  FWS explained that

when it considered the benefits of exclusion, it considered the benefits of exclusion to

conservation of the northern spotted owl.

> [W]e consider, among other things, whether exclusion of a specific area is likely
> to result in the overall conservation of the northern spotted owl through the
> continuation, strengthening, or encouragement of partnerships and the
> implementation of management plans or programs that provide equal or more
> conservation for the northern spotted owl than could be achieved through a
> designation of critical habitat.

*Id.* at 71,945.

> [W]e provide our analysis of areas that were proposed as revised designation of
> critical habitat for the northern spotted owl, for which there may be a greater
> conservation benefit to exclude rather than include in the designation.  Our
> weighing of the benefits of inclusion versus exclusion considered all relevant
> factors in order to make our final determination as to what will result in the
> greatest conservation benefit to the owl.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF  -13-

*Id.* at 71,947 (emphasis added).  This focus of comparison on benefits to the species aligns with Congress's command to strike "the balance in favor of affording endangered species the highest of priorities." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 194 (1978).  It also makes sense in the statute's structure, as FWS considers the economic impacts of critical habitat designation under a separate provision of the Act.

        D.      <u>The Challenged 2021 Critical Habitat Revision</u>

      25.      The timber industry and some sympathetic counties challenged the 2012 critical habitat rule, with FWS issuing the revision at issue here pursuant to a second settlement agreement in the long-pending federal lawsuit *Pacific Northwest Regional Council of Carpenters et al. v. Bernhardt et al.*, No. 13-361-RJL (D.D.C.).  Under the settlement agreement, FWS agreed to propose a revised critical habitat rule that identified proposed exclusions under section ESA Section 4(b)(2) of the ESA and to submit a final revised critical habitat rule or withdraw the proposed rule by the end of December 2020.  *Id.* at ECF 126, ¶ 2.

      26.      Under this settlement agreement, FWS first proposed to exclude 184,476 acres of Bureau of Land Management ("BLM") lands in southwest Oregon "where programmed timber harvest is planned to occur" under the BLM's 2016 Resource Management Plans ("RMPs").  *Proposed Rule, Revised Designation of Critical Habitat for the Northern Spotted Owl*, 85 Fed. Reg. 48,487 (Aug. 11, 2020).  Plaintiffs and others submitted comments on the proposed revisions, opposing the elimination of critical habitat on this set of BLM lands as contrary to the best available science, and arbitrary and capricious given the uncertain status of BLM's 2016 RMPs (challenged by the same timber groups in separate litigation), and FWS's past statements that those areas were essential to the owl's survival and recovery.  Plaintiffs did not oppose the exclusions proposed on Tribal lands.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF  -14-

27.    Following FWS's proposed revision of critical habitat, but before the issuance of the final rule challenged here, FWS responded to litigation involving a petition from conservation groups to "uplist" the spotted owl from threatened to endangered.  *See* Complaint for Declaratory and Injunctive Relief, *Envtl. Protection Info. Ctr.. v. U.S. Fish and Wildlife Serv.*, No. 20-08657-LB (N.D. Cal. Dec. 10, 2020); *12-Month Finding for the Northern Spotted Owl*, 85 Fed. Reg. 81,144 (Dec. 15, 2020).  In that finding, FWS recognized that the northern spotted owl warranted listing as an endangered species, but demurred, stating that its "uplisting" was "precluded by higher priority actions...."  *Id.* at 81,144.  Even while declining to act, FWS explained that:

> Habitat loss was the primary factor leading to the listing of the northern spotted owl as a threatened species, and it continues to be a stressor on the subspecies due to the lag effects of past habitat loss, continued timber harvest, wildfire, and a minor amount from insect and forest disease outbreaks.

*Id.* at 81,145.  Consequently, according to FWS itself, the northern spotted owl continued to decline across its range with habitat loss remaining a primary threat to the species.

28.    A month after recognizing the northern spotted owl's dire status, on January 15, 2021, FWS published a final rule shrinking protected critical habitat by over 3.4 million acres. *Final Rule, Revised Designation of Critical Habitat for the Northern Spotted Owl*, 86 Fed. Reg. 4,820 (Jan. 15, 2021).  The Final Rule dramatically increased the narrow, proposed exclusions set forth in the proposed rule and instead excluded:

(1)    All O&C lands, whether managed by the BLM or Forest Service (approximately 1,391,714 acres);

(2)    Forest Service "matrix lands" addressed in the Northwest Forest Plan and not already managed under the O&C Act (approximately 2,047,929 acres);

(3)    Lands managed under BLM's 2016 RMPs as Harvest Land Base, though not under the O&C Act (referred to as "matrix" prior to the 2016 RMPs) (approximately 12,046 acres);

(4)    Northern spotted owl critical habitat lands within the Forest Service Special Use Permit for the White Pass Ski Area (approximately 211 acres); and

Western Environmental Law Center
4107 NE Couch Street
Portland, Oregon  97232
(503) 914-1323

(5)      Additional Tribal lands (approximately 20,177 acres).

*Id.* at 4,831.

29.      The final rule not only increased the number of acres of critical habitat excluded, but in doing so added entirely new categories of federal lands and land managers, including for the first time, federal lands managed by the U.S. Forest Service, BLM lands that did not fall under the O&C Act, and areas near White Pass Ski Area.  Only the Tribal lands exclusion remained consistent from proposed to final.

30.      FWS relied solely on the exclusion process under ESA § 4(b)(2), 16 U.S.C. § 1533(b)(2), when slashing critical habitat from the 2021 final rule.  As justification, FWS asserted without support that the exclusions could lead to increased timber production, possibly lessen the risk of catastrophic wildfire, and protect "local custom and culture."  86 Fed. Reg. 4,839–40.  FWS also noted that the exclusions were in line with the Trump administration's deregulatory agenda.  *Id.* at 4,840.

31.      The final rule had an effective date of March 16, 2021.  On March 1, 2021, FWS delayed the rule's effective date until April 30, 2021.  86 Fed. Reg. 11,893 (March 1, 2021).

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

Violation of Administrative Procedure Act:
Failure to Provide Adequate Notice and Comment

32.      Fundamental to the APA's procedural framework is the requirement that, absent narrow circumstances, a federal agency must publish as a proposal any rule that it is considering adopting and allow the public the opportunity to submit written comments on the proposal.  5 U.S.C. § 553.  The proposal must be detailed and described with reasonable specificity to allow a

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF  -16-

Western Environmental Law Center
4107 NE Couch Street
Portland, Oregon  97232
(503) 914-1323

meaningful opportunity to comment.  A subsequent final rule must be a logical outgrowth of the proposed rule—i.e., reasonably foreseeable.

33.    When issuing rules under the ESA, including critical habitat rules, FWS must comply with the requirements of section 553 of the APA.  16 U.S.C. § 1533(b)(4).

34.    In the proposed rule, FWS asked for public comment on excluding 184,476 acres of northern spotted owl critical habitat on BLM lands in southwest Oregon, as well as 20,177 acres of Tribal lands, from the 2012 critical habitat rule.

35.    FWS generally asked for comments concerning reasons why it should or should not exclude areas as critical habitat; any probable economic, national security, or other relevant impacts of the designation on areas that were being considered for exclusion; additional areas that could be considered for exclusion, including Forest Service lands; any significant new information or analysis concerning economic impacts; and whether and how on-going litigation over the 2016 BLM RMPs should be addressed.  85 Fed. Reg. at 48,488.

36.    FWS specifically noted that "section 4(b)(2) of the Act directs that designations or revisions to critical habitat must be made on the basis of the best scientific data available and after taking into consideration the economic impact, the impact on national security, and any other relevant impact, of specifying any particular area as critical habitat." *Id.*

37.    In the final rule, FWS excluded 3,472,077 acres of owl critical habitat from the revised designation, including approximately 1,391,714 acres of O&C lands, regardless of management by BLM or the Forest Service, 2,047,929 acres of Forest Service lands, and 12,046 acres of other BLM lands.

38.    FWS's general request for comments on topics or potential additional changes, disconnected from any specific proposal, acreage number, or location, did not provide fair notice

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF  -17-

of how the agency actually planned to revise critical habitat, nor are the additional exclusions a logical outgrowth of the proposed rule.

39.    FWS's promulgation of the 2021 Revised Designation of Critical Habitat for the Northern Spotted Owl without adequate notice and comment as required under 5 U.S.C. § 553 was arbitrary, capricious, an abuse of discretion, not in accordance with law, and without observance of procedure required by law, in violation of the ESA, 16 U.S.C. § 1540(g)(1)(C), and APA, 5 U.S.C. § 706(2).

### SECOND CLAIM FOR RELIEF

Violation of the Endangered Species Act and Administrative Procedure Act:
Arbitrary and Capricious Decisionmaking

40.    In 2012, when FWS last designated critical habitat for the northern spotted owl, it found those areas essential for the owl's survival and recovery.  77 Fed. Reg. at 71,877.  FWS's 2021 revision of critical habitat stripped over a third of those lands of crucial protections.  86 Fed. Reg. at 4,820.

41.    When promulgating a regulation, FWS must articulate a satisfactory explanation for its action, including a rational connection between the facts found and the choice made.  A regulation is arbitrary and capricious under the APA where "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

42.    When an agency issues a regulation changing or amending a prior regulation, it faces a high burden.  The agency must demonstrate that (1) a new rule is permissible under the

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF  -18-

Western Environmental Law Center
4107 NE Couch Street
Portland, Oregon  97232
(503) 914-1323

statute; (2) there are good reasons for it; (3) the agency believes it to be better; and (4) the agency displays awareness that it is changing its position.  When a new regulation rests upon a factual finding contrary to prior policy, an agency must provide a more detailed justification than what would suffice if the new policy were created on a blank slate.  Any unexplained inconsistency between the prior rule and its replacement is a basis for finding the agency's interpretation arbitrary and capricious.

43.     The 2021 critical habitat designation is an abuse of discretion and arbitrary and capricious in multiple ways, including but not limited to:

(1) FWS failed to justify its conclusion that the benefits of exclusion outweigh the benefits of inclusion when the best available science demonstrated that such areas are essential to the owl's survival and recovery;
(2) FWS failed to adequately explain why the excluded lands were no longer essential to the northern spotted owl's survival and recovery; and
(3) FWS failed to rationally connect the findings of the prior economic analysis with the 2021 exclusion decision.

44.     FWS's promulgation of the 2021 Revised Designation of Critical Habitat for the Northern Spotted Owl lacked sufficient justification, a rational basis for a change in longstanding agency practice, a connection between prior economic and biological reviews and the result reached, and was not based on the best available science, as required by the ESA, rendering it arbitrary, capricious, and abuse of discretion, and not in accordance with law, in violation of the ESA, 16 U.S.C. § 1540(g)(1)(C), and APA, 5 U.S.C. § 706(2).

### THIRD CLAIM FOR RELIEF

Violation of the Endangered Species Act:
Invalid Exclusion of Critical Habitat Under ESA § 4(b)(2)

45.     The ESA commands FWS to make critical habitat determinations "on the basis of the best scientific data available and after taking into consideration the economic impact … and any other relevant impact, of specifying any particular area as critical habitat."  16 U.S.C. §

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF  -19-

1533(b)(2). "The obvious purpose of the requirement that each agency 'use the best scientific and commercial data available' is to ensure that the ESA not be implemented haphazardly, on the basis of speculation or surmise." *Bennett v. Spear*, 520 U.S. 154, 176 (1997).

46.     When promulgating the 2021 Revised Designation of Critical Habitat for the Northern Spotted Owl, FWS stated that it was not revisiting its prior determination that all units and subunits of critical habitat designated in 2012 were essential to the conservation of the species, and it undertook no new economic analysis. 86 Fed. Reg. at 4,824, 4,831. Instead, focusing solely on the ESA § 4(b)(2) exclusion process, FWS asserted that the new exclusions reflected "new conclusions by the Secretary as to the weight to be accorded to various benefits." 86 Fed. Reg. at 4,824.

47.     FWS abused its discretion in reaching these "new conclusions," which were grounded in neither law nor fact, were based on irrelevant factors, and ignored the best available science demonstrating that the excluded lands were essential to the owl's survival and recovery. The agency failed to show that its "decision was based on a consideration of the relevant factors." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).

48.     FWS's reliance on unsupported conclusions under ESA § 4(b)(2) in its promulgation of the 2021 Northern Spotted Owl Critical Habitat Revision was arbitrary, capricious, and abuse of discretion, and not in accordance with law, in violation of the ESA, 16 U.S.C. § 1540(g)(1)(C), and APA, 5 U.S.C. § 706(2).

FOURTH CLAIM FOR RELIEF

Violation of the Endangered Species Act:
Exclusion Under ESA § 4(b)(2) Contrary to Law

49.     FWS does not have authority to adopt a regulation that is "manifestly contrary to the statute." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984).

Western Environmental Law Center
4107 NE Couch Street
Portland, Oregon  97232
(503) 914-1323

50.     The ESA commands FWS to make critical habitat determinations "on the basis of the best scientific data available and after taking into consideration the economic impact … and any other relevant impact, of specifying any particular area as critical habitat."  16 U.S.C. § 1533(b)(2).

51.     FWS is also required to "make available for public comment the draft economic analysis of the designation.  The draft economic analysis will be summarized in the Federal Register notice of the proposed designation of critical habitat."  50 C.F.R. § 424.19(b).

52.     FWS may exclude an area from critical habitat only if it "determines that the benefits of such exclusion outweigh the benefits of specifying such area as part of the critical habitat, unless [it] determines, based on the best scientific and commercial data available, that the failure to designate such area as critical habitat will result in the extinction of the species concerned."  16 U.S.C. § 1533(b)(2).

53.     FWS did not change its prior determination that all units and subunits of critical habitat designated in 2012 were essential to the conservation of the species.  86 Fed. Reg. at 4,824, 4,831.

54.     FWS failed to conduct or publish an economic analysis for the 2021 Revised Designation of Critical Habitat for the Northern Spotted Owl.

55.     FWS invalidly determined that the "benefits of such exclusion outweigh the benefits of specifying such area as part of the critical habitat" by relying on impermissible factors include the purported "custom and culture" of several western counties, 86 Fed. Reg. 4,839–40, instead of on alleged benefits of exclusion to the protected species itself.  16 U.S.C. § 1533(b)(2).

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF  -21-

56.     FWS also based its exclusions on the wrong legal standard, stating that "the legal standard under which exclusions are evaluated is whether, based on the best scientific and commercial data available, the Secretary concludes that the exclusions "will result in extinction of the species."  86 Fed. Reg. at 4,841.  In doing so, FWS conflated the legal standard of review with a hard limit Congress placed on FWS's discretion and the vital role the ESA gave critical habitat with respect to survival and recovery of imperiled species.

57.     The 2021 Revised Designation of Critical Habitat for the Northern Spotted Owl is contrary to the text and purpose of the ESA and failed to follow the ESA's implementing regulations, in violation of the ESA and APA, 5 U.S.C. § 706(2).

PRAYER FOR RELIEF

Plaintiffs respectfully request that the Court:

(1)     Declare that FWS acted arbitrarily, capriciously, contrary to law, including the ESA, abused its discretion, and failed to follow the procedures required by law in its promulgation of the 2021 Revised Designation of Critical Habitat for the Northern Spotted Owl;

(2)     Hold unlawful and vacate the 2021 Revised Designation of Critical Habitat for the Northern Spotted Owl, reinstating the prior critical habitat rule from 2012;

(3)     Award Plaintiffs their reasonable fees, costs, and expenses, including attorneys' fees; and

(4)     Grant Plaintiffs such further and additional relief as the Court may deem just and proper.

Western Environmental Law Center
4107 NE Couch Street
Portland, Oregon  97232
(503) 914-1323

DATED this 23rd day of March, 2021.

Respectfully submitted,

*/s/ Susan Jane M. Brown*

SUSAN JANE M. BROWN (OSB #054607)
WESTERN ENVIRONMENTAL LAW CENTER
4107 N.E. Couch Street
Portland, OR  97232
(503) 914-1323 | Phone
brown@westernlaw.org

KRISTEN L. BOYLES (WSB #23806)
*(Pending Pro Hac Vice Admission)*
EARTHJUSTICE
801 Third Avenue, Suite 610
Seattle, WA  98104
(206) 343-7340 | Phone
kboyles@earthjustice.org

*Attorneys for Plaintiffs*

Ryan Adair Shannon (OSB # 155537)
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 11374
Portland, OR 97211
Tel: 503-283-5474 ext. 407
rshannon@biologicaldiversity.org

*Attorney for Center for Biological Diversity*

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF  -23-

CORPORATE DISCLOSURE STATEMENT

Pursuant to FRCP 7.1, plaintiffs state that they have no issued shares to the public and have no affiliates, parent companies, or subsidiaries issuing shares to the public.

Respectfully submitted this 23rd day of March, 2021.

*/s/ Susan Jane M. Brown*
SUSAN JANE M. BROWN (OSB #054607)
WESTERN ENVIRONMENTAL LAW CENTER
4107 N.E. Couch Street
Portland, OR  97232
(503) 914-1323 | Phone
brown@westernlaw.org

KRISTEN L. BOYLES (WSB #23806)
*(Pending Pro Hac Vice Admission)*
EARTHJUSTICE
801 Third Avenue, Suite 610
Seattle, WA  98104
(206) 343-7340 | Phone
kboyles@earthjustice.org

*Attorneys for Plaintiffs*

Ryan Adair Shannon (OSB # 155537)
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 11374
Portland, OR 97211
Tel: 503-283-5474 ext. 407
rshannon@biologicaldiversity.org

*Attorney for Center for Biological Diversity*

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF  -24-